# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 11, 2014 Session

## DAVID ALLAN FOGLE, SR. v. MARDONNA SHAWN FOGLE

### Appeal from the Chancery Court for Sullivan County
### No. K0037938(M)     Hon. John S. McLellan, III, Chancellor

### No. E2013-00997-COA-R3-CV-FILED-MAY 22, 2014

In this divorce action, the trial court granted Wife a divorce, divided the marital assets, and awarded Wife alimony of $700 per month for 48 months. Wife appeals. We modify the trial court's judgment to reflect an award of periodic alimony in the amount of $1,000 per month.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

R. Wayne Culbertson, Kingsport, Tennessee, for the appellant, Mardonna Shawn Fogle.

Keith A. Hopson and Daniel B. Minor, Kingsport, Tennessee, for the appellee, David Allan Fogle, Sr.

### OPINION

### I.  BACKGROUND

David Allan Fogle, Sr. ("Husband") and Mardonna Shawn Fogle ("Wife") were married on August 2, 1980. Two children were born of the marriage and have since attained the age of majority. Husband supported the family from income he received while working as a glass technician at a local glass plant, while Wife maintained the home and cared for the children. In October 2011, Husband sought a divorce after more than 30 years of marriage. Wife responded by filing a counter-complaint for divorce in which she requested spousal support.

Despite the length of the marriage, Husband and Wife (collectively "the Parties") had not accumulated any significant assets or property by the time of divorce. The Parties each submitted a statement of income and expenses. Husband initially reported a monthly income of $3,059.52 per month and expenses of $2,537.50 per month, while Wife initially reported a monthly income of $464.10 per month and expenses of $1,705.38. During the pendency of the hearing, the court awarded Wife spousal support in the amount of $950 per month. A hearing was held before the court at which Husband and Wife testified.

Husband, who was 52 years old at the time of trial, testified that he had just recently received his graduate equivalency diploma. He was currently employed at AGC, North America Glass Plant, where he had worked for the past 28 years. He acknowledged that his gross yearly income was in excess of $50,000. He claimed that he had not been on vacation in approximately 20 years and that he worked a "seven day swing shift" that required him to work either 12 hours during the day or 12 hours at night. He claimed that his net monthly income had increased to $3,672.87 but that his monthly expenses remained $2,537.50, leaving a surplus of approximately $1,135.37, which did not include his current spousal support obligation of $950. He claimed that he received assistance from his mother and brother in order to survive on his current income and that he could not continue to support Wife at the rate of $950 per month. He acknowledged that his monthly expenses had increased as a result of his purchase of a Mercedes with an accompanying monthly car payment in excess of $400.

Husband testified that he filed for divorce because he believed they "just couldn't get along" and were "arguing all the time on just anything that comes up." He recalled that Wife obtained her graduate equivalency diploma but had never pursued further education. He conceded that he and Wife agreed that she would raise the children while he worked and that she was successful in her endeavor of raising the children. He related that at one time, Wife worked as a cosmetologist but that she eventually quit and returned to her position as a full-time homemaker. He acknowledged that since their separation, Wife had secured employment at a shoe store and was only able to earn minimum wage to support herself.

Wife confirmed that she obtained her graduate equivalency diploma and cosmetology license and that she worked as a cosmetologist for awhile. She stated that her cosmetology endeavor was not very profitable and that she had not maintained her license. She testified that her family was her career while she was married to Husband and that after the separation, she procured a job at Houser Shoes, where she earned approximately $464 per month. She acknowledged that she had been fired for tardiness but claimed that her boss really fired her because she had "caught him in a lie." She stated that her search for a new job was unsuccessful and that she had not completed the paperwork for unemployment compensation because she did not have internet access.

Wife testified that Husband left her after a fight concerning telephone numbers that she found on his phone. She recalled that Husband continued to pay the bills while she remained in the house that she had shared with Husband. She related that the house was owned by Husband's mother. She stated that she sought spousal support from the court after she left the house and Husband ceased providing voluntary support. Wife acknowledged her prior testimony that she did not have any monetary funds following the divorce, despite Husband's earlier contention that she had received $6000 from his mother when she left the house. She conceded that she had received approximately $650 when she vacated the house because she left the appliances.

Wife asserted that she still sought reconciliation with Husband but that Husband had refused her attempts to reconcile. She related that she sought treatment for depression following the separation. She claimed that she was unable to support herself and that unlike Husband, she could not receive assistance from family members. She asserted that she could not cut expenses beyond what she had already budgeted and that even with her meager expenses, she could not afford her apartment, could not adequately feed herself or her two dogs, and could not afford to repair her vehicle, which did not have headlights and appeared to need additional work.

Helen Lane, Husband's mother, testified that she had sold her house to the Parties. She related that they had fallen behind on the payments and that she eventually began foreclosure proceedings after Husband left and Wife failed to remit any payments for "over a year." She stated that she and Wife came to an agreement in which she would pay her $5000 to vacate the premises and $1000 if Wife left the appliances. She related that after Wife signed a quitclaim deed, she gave the money to Steve Fogle, who then paid Wife on September 7, 2011. Mr. Fogle confirmed Ms. Lane's testimony.

Following the hearing, the trial court granted Wife's request for divorce, divided the marital assets, and awarded Wife alimony of $700 per month for 48 months pursuant to the factors set forth in Tennessee Code Annotated section 36-5-121(i). Following the denial of post-trial motions, this timely appeal followed.

## II. ISSUE

We consolidate and restate the issue raised on appeal as follows:

Whether the trial court abused its discretion by only awarding spousal support in the amount of $700 per month for 48 months.

-3-

### III.  STANDARD OF REVIEW

Trial courts have broad discretion in awarding spousal support. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004).  "Accordingly, '[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.'" *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)).  The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Id.* at 733.  Thus, an appellate court must review a trial court's decision regarding alimony using the deferential abuse of discretion standard. *See Bratton*, 136 S.W.3d at 605.  If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

### IV.  DISCUSSION

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th ed., as

[a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced.  Alimony is distinct from a property settlement.

Tennessee recognizes four different types of alimony:  rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido.  Each type addresses a specific need.  Rehabilitative alimony is temporary support intended to assist the economically disadvantaged spouse in obtaining the education or training necessary to allow him or her to achieve a reasonable standard of living in comparison to the standard of living maintained by the parties during the marriage or to the post-divorce standard of living available to the other spouse. Tenn. Code Ann. § 36-5-121(e)(1).  Where rehabilitation is not necessary, transitional alimony may be awarded to assist the disadvantaged spouse in adjusting to the economic consequences of the divorce.  Tenn. Code Ann. § 36-5-121(g)(1).  Alimony in futuro and alimony in solido are long-term forms of spousal support. Tenn. Code Ann. § 36-5-121(f)(1), (h)(1).  Alimony in futuro is typically awarded when a spouse is economically disadvantaged, but rehabilitation is not feasible, meaning that the disadvantaged spouse cannot achieve an earning capacity that will allow him or her to maintain an appropriate

standard of living. Tenn. Code Ann. § 36-5-121(f)(1). This type of alimony is awarded on a "long term basis or until death or remarriage of the recipient" spouse. *Id.* Alimony in solido, on the other hand, is a lump sum award of alimony, but it may be paid in installments over a specific period of time. Tenn. Code Ann. § 36-5-121(h)(1). Courts typically award this type of alimony to adjust the division of marital property. *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001). Alimony in solido may also be awarded to assist the disadvantaged spouse in paying attorney's fees. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000).

"The statutory framework for spousal support reflects a legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 109 (Tenn. 2011) (citing Tenn. Code Ann § 36-5-121(d)(2)-(3); *Bratton*, 136 S.W.3d at 605; *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003)). "While this statutory preference does not entirely displace long-term spousal support, alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary." *Id.* (citing *Bratton*, 136 S.W.3d at 605; *Robertson v. Robertson*, 76 S.W.3d 337, 341-42 (Tenn. 2002)).

In determining whether to award alimony, the court must first consider whether the spouse seeking alimony is economically disadvantaged. *Perry*, 114 S.W.3d at 467. "Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award." *Id.* at 467. In setting the type, duration, and amount of support, courts are guided by the following list of factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

-5-

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). In addition to the factors found in Tennessee Code Annotated section 36-5-121(i), the two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342. When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Aaron*, 909 S.W.2d at 410; *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). Courts must also take into

consideration the different roles a spouse may have in a marriage when considering an award of alimony. Tenn. Code Ann. § 36-5-121(c). "There are no hard and fast rules for spousal support decisions, and such determinations require a 'careful balancing' of the relevant factors." *Miller v. Miller*, No. M2002-02731-COA-R3-CV, 2003 WL 22938950, at *3 (Tenn. Ct. App. Dec. 10, 2003) (citing *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998)).

Wife asserts that the trial court erred in setting Husband's support obligation by failing to consider and properly weigh the pertinent factors. She also contends that the court erred by setting a time limitation on the obligation after specifically finding that she was incapable of ever achieving economic rehabilitation without assistance. Husband responds that the trial court did not err in setting the type, duration, and amount of spousal support. We agree with Wife's assertion.

When considering the support factors, a number of the factors weigh in favor of granting a substantial award to Wife. Wife was clearly capable of maintaining minimum-wage employment, but she lacked an earning capacity that was comparable to Husband's long-term employment in a stable field. Tenn. Code Ann. § 36-5-121(i)(1). The marriage was of a long duration, namely 32 years. Tenn. Code Ann. § 36-5-121(i)(3). Wife also made substantial contributions to the marriage as a homemaker for the duration of the marriage. Tenn. Code Ann. § 36-5-121(i)(10). The remaining factors appear equally weighted or inapplicable. Indeed, the Parties did not enjoy an extravagant lifestyle or possess significant assets. However, the record reflects that Wife was economically disadvantaged and in need of support. Wife testified that she was on the verge of losing her apartment, could not adequately feed herself, and that she could not afford to pay for necessary car repairs. While Husband's education was comparable to Wife's, he had thrived in long-term employment, thereby providing him with the ability to support Wife.

Likewise, the record reflects that Wife was incapable of economic rehabilitation and that an award of transitional alimony would have been inappropriate when the record lacked evidence that Wife had the capacity for self-sufficiency. Wife simply lacked the experience and skills necessary to maintain a household without the benefit of long-term support. With these considerations in mind, we conclude that the trial court abused its discretion in awarding Wife $700 for a period of 48 months. We hold that Wife was entitled to an award of periodic alimony in the amount of $1000 per month until her death or remarriage. Accordingly, we modify the trial court's award of alimony and award Wife periodic alimony in the amount of $1000 per month. In so concluding, we remind the Parties that awards of alimony in futuro "remain in the court's control for the duration of such award, and may be

increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A); *see also Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

## V. CONCLUSION

The judgment of the trial court is modified to award wife periodic alimony in the amount of $1,000 per month. This case is remanded to the trial court pursuant to applicable law for enforcement of the court's judgment and for the collection of costs assessed below. Costs of the appeal are taxed to the appellee, David Allan Fogle, Sr.

_____
JOHN W. McCLARTY, JUDGE